### UNITED STATES v. MIDWEST OIL CO. et al.

#### (District Court, D. Wyoming. June 14, 1913.)

#### No. 733.

PUBLIC LANDS (§ 29*)—WITHDRAWAL FROM ENTRY—POWER OF SECRETARY OF THE INTERIOR.

    Prior to Act June 25, 1910, c. 421, § 1, 36 Stat. 847 (U. S. Comp. St. Supp. 1911, p. 593), authorizing such action, neither the President nor the Secretary of the Interior had power to make an order withdrawing public lands from settlement, location, sale, or entry under the public land or mining laws.

    [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 41-47; Dec. Dig. § 29.*]

In Equity. Suit by the United States against the Midwest Oil Company and others. On motion by defendant to dismiss. Motion sustained.

Ernest Knaebel, Asst. U. S. Atty. Gen., of Denver, Colo., H. S. Ridgely, U. S. Dist. Atty., and Wm. E. Mullen, Asst. U. S. Dist. Atty., both of Cheyenne, Wyo.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Vaile, McAllister & Vaile and Schuyler & Schuyler, all of Denver, Colo., and Lee Champion, of Casper, Wyo., for defendants.

RINER, District Judge. The bill of complaint in this case seeks to have declared void the claim of title asserted by the defendants to certain oil lands located in Natrona county, Wyo., and described in the bill as the N. E. ¼ of section 11, township 9 N., of range 70 W. The defendants have filed a motion to dismiss. The facts as disclosed by the bill may be briefly stated as follows:

On the 27th of September, 1909, the Secretary of the Interior issued what is designated in the record as temporary petroleum withdrawal No. 5, which is in the following words:

"In aid of proposed legislation affecting the use and disposition of the petroleum deposits on the public domain, all lands in the accompanying lists are hereby temporarily withdrawn from all forms of location, settlement, selection, filing, entry, or disposal under the mineral or nonmineral public land laws. All locations or claims existing and valid at this date may proceed to entry in the usual manner after field investigation and examination."

Then follows a description of the lands in the states of California and Wyoming, which includes the 160 acres involved in this suit. It is further stated in the bill that subsequent to the issuance of this withdrawal order, and on the 27th of March, 1910, the grantors of the defendants entered upon the land in controversy and sunk a well to a great depth, and had therein encountered, and thereby rendered subject to ready extraction, large deposits of petroleum of great commercial value within the above-described parcel of land. The bill shows that no work had been done by the grantors of the defendants, the original claimants, prior to the 27th of March, 1910, nor was there any discovery until after the latter date. The bill then states that on May 4, 1910, the original claimants caused to be filed for record and to be recorded in the records of Natrona county a location certificate bearing date March 10, 1910, evidencing a claim or location by them of the lands described in the bill as a petroleum placer mining claim, under and in pursuance of the mining laws of the United States. It then sets forth that the property was transferred to the defendants, and that the rights of the defendants are based solely upon a transfer and assignment of the rights in said lands acquired by the previous location and by the drilling of said well; that the location was violative of the order of withdrawal and of the act of Congress approved June 25, 1910. The bill then states that the defendants had extracted more than 50,000 barrels of oil of the value of $1 per barrel; that a demand was made upon the defendants on December 19, 1911, to vacate the lands and surrender possession, which they refused to do; that the present value of the lands exceeds $250,000. The bill closes with a prayer that the defendants be decreed to have no estate, right, title, or interest in or to the land, or to the minerals therein, and that the lands and minerals be adjudged to be the property of the plaintiff. It also prays for an injunction and accounting.

The sole question presented by the motion to dismiss is whether the Secretary of the Interior, even by the direction of the President, had

the power, implied or otherwise, to withdraw these lands from entry in the absence of congressional legislation authorizing him to do so. Prior to the 25th of June, 1910, there was no statute expressly authorizing the Secretary of the Interior or the President to make withdrawals of public land of the class herein described and for the purpose named in the order of withdrawal from settlement, location, sale, or entry under the public land or mining laws of the United States. This being true, the question is narrowed to this: Did the Secretary of the Interior or the President, under the expressed or implied' powers conferred upon them to administer the land laws and to make all needed rules and regulations with reference thereto, have the power to make the withdrawal order of September 27, 1909?

While the question resolves itself into a narrow one, it opened a broad field for discussion and was ably argued by counsel on both sides. It would be interesting indeed to notice at some length the propositions discussed by counsel in support of and against the existence of the power to promulgate this order, and to review the authorities to which the court's attention was directed; but as the case will doubtless go to an appellate court (and the court indulges the hope that it will) that seems unnecessary. It is quite sufficient for the court here to say that it has devoted itself to a careful and painstaking examination of every authority called to its attention by counsel, both at the oral argument and in the briefs, and that such examination and consideration has led to the conclusion that the power did not exist, in the absence of congressional legislation authorizing it.

A decree will be entered sustaining the motion and dismissing the bill, with an exception allowed to the plaintiff.